The next case is number 22-18-58, Optis Wireless Technology v. Vidal. Okay, Mr. Brennan. Good morning, Your Honors. May it please the Court. The Court should reverse the Board's final written decisions for three reasons. First, the Court should reverse the Board's final written decisions as to Claims 1-40 because the Board erred in construing the term Groups of Symbols and accordingly erred in finding that Wallace discloses Groups of Symbols. Second, the Court should reverse the Board's final written decision as to Claims 1-44 which is all claims of the 569 patent because the Board erred in finding that Wallace discloses a time frequency domain that has a first part and a second part. Third and finally, the Court should reverse the Board's final written decisions as to Claims 7-17-27 and 37 because Wallace does not disclose at least a part of the encoded second data is not continuously mapped to each symbol within each of the Groups of Symbols. I'll start with the Groups of Symbols. What was the third issue you mentioned? Is that the first and second domain issue or is that the non-continuous mapping? The third issue is the non-continuous mapping issue, Your Honor. I'll start with the first reason which is the construction of Groups of Symbols. So the Board erred by construing Groups of Symbols such that the Groups of Symbols do not need to be defined prior to mapping. That construction is erroneous because it is inconsistent with the claim language and is inconsistent with the specification. I don't understand why you can't have mapping to Groups of Symbols if it's dynamic and iterative, particularly when the patent is directed to having feedback as to frequency conditions, et cetera. So why does the mapping have to be to a predetermined Group of Symbols? Why can't the Groups of Symbols be determined as part of the dynamic process of mapping? Well, there's two reasons, Your Honor. First, the claims reside both mapped to symbols and mapped to Groups of Symbols. And so under the case law, those two terms are presumed to mean something different. To make them mean something different, the groups of data need to exist before mapping. That doesn't seem very convincing. What's the other one? The other one is the specification. If you look, it has four embodiments. In every single one of those embodiments, the groups of data are formed prior to mapping. So what happens in three of these embodiments is... In this case, Your Honor, I don't think it's broader than the specification because I think you have the claim language itself that supports that groups of data need to be defined prior to mapping. Well, one, for the reason that we need to differentiate between mapped to symbols and mapped to Groups of Symbols. But second, I think the claim language, mapped to Groups of Symbols, presumes that the Groups of Symbols already exist. You can't map to something that does not exist. For example, an example we gave in our brief, you can't assign people to teams if those teams do not exist. For the same reason, you cannot map to Groups of Symbols that do not already exist. Yeah, you could have a situation where teams are selected as part of a dynamic process. They don't have to pre-exist. Kids divide themselves into two teams. It's a dynamic process. But in that case, Your Honor, you just said divide yourselves into two teams. So in that case, the teams do already exist. They may not have kids on the teams yet. No, the teams are determined by the process of selecting, and it's a dynamic process. I think in that case, the kids on the teams are determined by this dynamic process. But the existence of the teams is determined before the kids are assigned to the teams. Not in my hypothetical. But I think it is even true under your hypothetical, Your Honor. If you say divide kids into teams, by saying divide yourselves into teams, you are assuming that these teams exist. They don't have kids on them yet, but the teams exist. And I think that's what the 569 patent describes. And even if there is some ambiguity in this language, Your Honor, I think the specification fully supports that the groups of symbols need to be defined prior to mapping. And I do think the difference between mapped to symbols and mapped to groups of symbols is a strong reason that we need to construe groups of data to mean... Under Judge Dyke's example, if you're going to have your required groups to be defined before mapping, why is it you can't say divide yourselves into Team A and Team B? Is that any different than just saying divide yourself into teams? Is there further defining of the groups when you do that? I don't think so, Your Honor. I think those would be the same. I think I would call that assigning to teams. That's part of the process of assigning to teams, whereas the creation of the teams comes before that. So, for example, in the 569 patent, deciding that you're going to map Data 1 to these groups of symbols, that's part of mapping. But the groups of symbols to fall within the scope of the 569 patent would need to be determined in advance. That's how the specification describes the 569 patent. Every single embodiment describes it that way, and I think that's consistent with the claim language. And I think it's... I don't know if it's undisputed, but Wallace does not disclose groups of data that are created prior to mapping. Bawe, Below, and the Board relied on Wallace Figure 2. All Wallace Figure 2 shows is data that has already been mapped to a time-frequency domain. It doesn't show forming any groups of symbols prior to mapping to the time-frequency domain. The Board essentially agreed with that. The Board said that Wallace does not disclose how Figure 2 came to be. The Board instead found that Wallace suggests mapping to data, to groups of symbols. But the Board's analysis suffers from a number of errors. One, it succumbed to hindsight bias. For example, the Board explicitly compared Wallace Figure 2 to the figures of the 569 patent and essentially found because they look similar, then Wallace suggests mapping data to groups of symbols. In our view, that is classic hindsight bias. It is using the teachings of the 569 patent to interpret the prior art. It's viewing Wallace through the lens of the 569 patent instead of determining what would have been obvious at the time of the 569 patent. The Board also conflated grouping data that needs to be transmitted with grouping symbols prior to mapping the data. For example, the Board found that because data 1 through data 6 are going to get transmitted to different receivers, you would need to group the symbols that need to be transmitted beforehand. At best, that disclosure in Wallace, I think, suggests grouping data that needs to be transmitted. It doesn't suggest grouping symbols in the time-frequency domain. So for that reason, it's our position that the Court should reverse the Board's final written decisions as to claims 1 through 40. Second, even if the Court disagrees with that, the Court should reverse the Board's final written decisions as to claims 1 through 44 because Wallace does not disclose a first part and a second part of a domain. Under the claim language, the time-frequency domain needs to be separated or divided into a first part and a second part. The claims recite first data and second data that are mapped to a first part of a domain and a second part of a domain. If the claims are not construed such that the time-frequency domain must be split into a first part and second part, there's no need for the first part of a domain and second part of a domain claim language. The claims could instead just talk about the first data and the second data and how that data is mapped in the time-frequency domain. I think it's undisputed that Wallace Figure 2 does not disclose a time-frequency domain that is split into a first part and second part. It's a unitary time-frequency domain that has data mapped to it. Finally, even if the board disagrees with... I'm sorry, the court disagrees with those first two arguments, it should still reverse the board's final written decisions as to claims 7, 17, 27, and 37 because the board erred in finding that Wallace discloses data that is not continuously mapped to each symbol within each of the groups of symbols. So this claim language is a little bit complex, but the important thing is that it requires data that is not continuously mapped to each symbol within each of the groups of symbols. Within what? Within each of the groups of symbols, Your Honor. The board relied on Wallace's Figure 2 disclosure of data 1 that is mapped in time slot 2 and time slot 7 and essentially found that's one group of symbols and there's a discontinuity because that group does not include time slots 3, 4, 5, and 6. That is incorrect for two reasons. One, it incorrectly assumes that time slot 2 and time slot 7 form a single group. There is no disclosure whatsoever in Wallace that would support treating those as a single group. Even if you could treat that as a single group, there is data in Wallace's Figure 2 mapped to every single one of those symbols. All of the data 1 is mapped in time slot 2 and time slot 7. What about the claim language? It requires that there be some sort of alignment along the frequency index. So it requires that the symbols be aligned along the frequency index, which was treated before the board as basically meaning that the mapping, you map in an increasing order along the frequency index. So if you have frequency index 1, the next mapping would be frequency index 2 and then frequency index 3. That's how the parties in the board treat it along that. I don't understand your argument. Are you saying that we should ignore that limitation? No, I'm not saying you should ignore that limitation. That limitation is not really part of our argument. Our argument is simply that the data is continuously mapped in the group. So if the group is defined, as the board has said, as data 1 in time slot 2 and data 1 in time slot 7, there is data mapped continuously within that group. None of the symbols are skipped during mapping. So if the court has no further questions, I'll reserve the remainder of my time for rebuttals. Why do you ignore that part of the claim language? It says that if you're going to examine when the data is continuously mapped, it says aligned along, this is the claim language, the frequency index. And correct? That's what the claim says? That's correct, Your Honor. And are you saying that that doesn't matter? We've just been looked at? You're not addressing that. No, we're not saying that doesn't matter, but I think the symbols in Wallace Figure 2 are aligned along the frequency index. That's why we did not address it, because the data is mapped in an increasing order along the frequency index. That's why our argument focuses on the discontinuous nature and not the aligned along the frequency index. So it does matter? It does matter to the claim. Yes, it does matter. It has meaning in the claim, Your Honor. We just think that Wallace does disclose that part. It does not disclose the not continuously mapped to each symbol within each of the groups of symbols part. I don't want to beat a dead horse, but it does matter to the claim, but yet it doesn't matter to the degree where you think it's important to address. I just think Wallace does disclose aligned along the frequency index, so we haven't disputed that. I just don't think we have an argument there. I do think we have an argument that the second data is not continuously mapped to each symbol within each of the groups of symbols, which is why we focused on that. I'll reserve the rest of my time. Okay. Mr. Turner. Good morning. May it please the Court. Mike Tyler from the United States Patent and Trademark Office. In the IPR subject to these appeals, the Board found all challenged claims unpatentable over the combination of Wallace and Ishikawa. Specifically, the Board found that Wallace teaches each and every limitation of the claims, except for any limitation requiring that mapping be done in an increasing order according to either the frequency or time index, which Ishikawa teaches. Notably, Optus has not appealed the Board's finding and motivation of these references or any of the teachings in Ishikawa. As we just heard, their arguments are primarily about three of the teachings of Wallace, one of which, they argue, is dependent on a claim construction, that being the groups-of-symbols construction. Starting with that, the Board appropriately viewed this as a BRI case and looked first at the language of the claims themselves and found that these are very broad claims. And in doing so, they noticed that there is nothing in the claims that describe the manner or method in which the mapping must take place. And you can kind of tell from the briefing, the party's dispute is whether this concept of predetermination needs to be read into the claims. And I will note that the patentee, if we look at Dependent Claim 4, knew how to use the word predetermined when writing claim language. And if we look at Claim 41, which is an independent claim, there is a little additional requirement of how mapping needs to be done. But something like Claim 1, it's completely broad and open-ended, and if the data has been mapped, regardless of how it got there, the Board found that that would meet the limitation of the claim. Should this panel determine that that claim construction was an error, the Board did do an extensive finding that even under Optus's proposed construction, it found that Wallace did teach that groups of symbols as well, that it does teach predetermining the group before mapping, or at least suggests it. Does the panel have any questions about the claim construction issue for me? Okay. So the next issue is this issue of whether or not Wallace teaches a first part of the data and a second part. And I think it's important to first note that the only time those terms show up in this patent are in the claims. So there's no discussion in the specification anywhere about dividing the time-frequency grid or a first part or a second part. And much has been made about what has been characterized as a comparison of figures from the patent to the prior art, and I think what's missing there is that in both the Board and hopefully in our brief, we made it clear that we were using the claims as the touchstone for both of those arguments. So in this case, the Board looked and said, well, what is a first and second part of the domain according to the patent? We have nothing in the specification, but what we do have are these figures and some comments made in prosecution history about these figures and how they support this part of the claim. After doing that analysis, the Board determined sort of what's good for the goose is good for the gander, that if figures 4 are enough to support the claim language, then one of skill in the art looking at figure 2 of the prior art reference, Wallace, would be able to also fill in the gap and come to that same, the claim language, and find that it meets those limitations. So in your view, figure 4D is an adequate example of a first part domain, second part? Yes, Your Honor. Figure 4D would be. In fact, I think any of the figures 4s would satisfy this. 4D becomes a little more relevant in the non-contiguous argument, which I was going to get to next. But yes, Your Honor, you could find a first and second domain in figures 4D as well. Okay, and I guess we can move on to the non-contiguous argument. And again, this applies to four of the dependent claims. And again, we're in a situation where this concept of non-contiguous was not discussed in the specification. And this is, again, why we see the Board looking at figure 4D, and Dr. Wells provided expert testimony about one of skill in the art would look at figure 4D and determine that this group has some non-contiguous parts. In fact, there's one in the frequency domain and two in the time domain when we look at figure 4D. And I think there's some disagreement about... I wanted to cut, actually, on this point, a couple of things. I believe I heard my colleague say that Wallace nowhere discloses groups of data. And if I could just... If we go to Appendix 1508, at column 20, lines 10 through 19, Wallace does have a discussion of using OFDM modulation, in which it says, in one implementation of OFDM modulation, the data in each channel data stream is grouped to blocks. With each block having a particular number of data bits. So again, I think Wallace does have that concept of grouping. And as well, I think I heard my colleague say that there was no disclosure treating data 1 as a single group in Wallace. And for that, if we could just turn to Appendix 1504, at line 24 through 25, it clearly states, a data transmission, e.g. data 1, may also occur over non-contiguous time slots. So it's referring to it as a single group, data 1, and that it's in the prior art, it's saying, here we are in non-contiguous time slots. And unless your honors have any other questions, I'll give back the remainder of my time. Okay, I'm not sure I have anything to do with this. Mr. Brennan. Thank you, Your Honor. Just a few points, briefly. I think Mr. Tyler said that there is nothing in the 569 patent about a first part and a second part of a domain. While the 569 patent may not use those terms, if you look at, for example, Figures 4, specifically 4C, you can very easily see that there's two parts of a domain in which data is mapped in different ways. On the left side of the domain, it's mapped in these 5x2 blocks, and then on the right side, it's mapped in these 2x5 blocks, and then, what is that, a 3x10 block.  and a second part of a domain. With respect to our third argument, this argument about discontinuity in mapping, I think Mr. Tyler fell into the exact same trap that the Board fell into, explicitly comparing Wallace Figure 2 to the figures of the 569 patent and ignoring the claim language. The claim language specifically requires data that is not continuously mapped to each symbol within each of the groups of symbols. If we compare the claim language to Wallace, it simply doesn't show it. To respond to two of his specific citations, he referred to the disclosure in Wallace on, I'm missing a number, but it's the episode where he said that Data 1 is mapped to Timeslot 2 and Timeslot 7, and therefore Data 1 is a group of symbols. Data 1 is data that has been mapped to the domain. It is not the groups of symbols that have been formed prior to mapping. Unless the Court has any further questions, we ask that the Board, I'm sorry, the Court reverse the Board's final written decisions. Okay, thank you.